am here with my co-counsel Jim Buchanan, who will be handling the rebuttal, and then as I also understand the court's consolidation order, Mr. Pat Cullen is here if the court has any questions of him in the consolidated case. There are two issues that I would like to address today. The first issue is jurisdiction in garnishment proceedings, and the second issue is alter ego, and I start with garnishment because it's a fairly simple matter. Under Texas law, and this court, of course, is governed by Texas law in this garnishment proceeding. Under Texas law, a garnishment judgment is an in personam judgment, and it therefore requires in personam jurisdiction over the garnishee. I don't know what the law is in other states, but in the state of Texas, that is the law. We have cited the court, Citizen Bank of Ennis v. Hart, followed by the Federal Bankruptcy Court in the Northern District of Texas and N. Ray Benson, both for that proposition. We have also cited the court, the Monies case out of the Second Circuit, 2006 case, which also holds that the court first has to determine that it has in personam jurisdiction over a garnishee before it can proceed with a garnishment proceeding. So having said that, interestingly, if you read the plaintiff's response brief in this case, they do not contest whether or not Judge Hoyt in fact had in personam jurisdiction over my clients. They don't even go there. We've explained . . . That's the way I read their brief. Yes, Your Honor. And we have very carefully laid out in detail why Judge Hoyt first had to determine whether he had in personam jurisdiction, and then we've laid out in detail why, in fact, there was no in personam jurisdiction over our clients in this case. Well, two of your clients. Two of my clients. There are no minimum contacts between the state of Texas and my clients with respect to this proceeding. And that's not contested by the plaintiffs in this case. Did Judge Hoyt ever have an oral hearing on this? No, Your Honor. It was strictly by submission. And the order that he wrote or signed, I should say, was drafted by the plaintiffs. And the order relies very heavily on this doctrine of alter ego, because if you read the order, within the four corners of the order, it's pretty clear that Judge Hoyt and the plaintiffs who drafted the order don't feel very strongly at all about their jurisdictional arguments. So what they want to do is they want to lump all of what I'll call the Formosa folks into this one sort of jurisdictional conglomerate for purposes of service and for purposes of jurisdiction. Rice bowl, so to speak. Exactly. And that will not fly in the state of Texas. In the state of Texas, and our two best cases here are PHC-Mendon and SS Partners, both out of the Texas Supreme Court, plus the Texas legislature. Plaintiffs rely heavily on a case called Castleberry out of the Texas Supreme Court. It was decided by the court in the 1980s, and quite frankly, the court came up with what everybody sort of agreed was a very, very fuzzy concept of alter ego and setting aside the corporate form. The legislature almost immediately overruled Castleberry in what was then Article 2.21 of the Texas Business Corporation Act. It is now Section 21.223 of the Texas Business Organizations Code, but it's just a recodification of the same statute that the legislature used to overrule Castleberry. And in 21.223, the legislature has made it very clear that under no circumstances are for purposes of contractual obligations, in the absence of actual fraud, an intent to commit fraud, to perpetrate a fraud, and to, in fact, perpetrate a fraud. Now I say that because my clients, and I say this frankly and I say this sincerely, my clients are sympathetic with the situation that the Cuban plaintiffs find themselves in with respect to the Dry Dock Company in Curacao. But we had no part in whatever wrongdoing occurred in Curacao. We are innocent third parties. One of my clients owes a debt to the Curacao Dry Dock Company. That's undisputed. We've admitted that in our answer subject to our motion to dismiss. But in no way is there any evidence, not even a hint of evidence, that my clients have engaged in some sort of scheme, corporate scheme, to commit a fraud upon these Cuban plaintiffs. My clients are part, admittedly, are part of a worldwide corporate conglomerate, a shipping conglomerate, a plastics conglomerate. They build hospitals in Taiwan. And we don't, all there is in the record, and I see that Your Honor looking at it, opposing counsel has distributed a visual aid to the court. And frankly, in reviewing that visual aid, I can't really tell where that visual aid comes from because that visual aid in itself does not appear to come from the record. What is in the record is the website of this conglomerate, admittedly this conglomerate. And it is at record pages 215, 216, 226, and 206. And I submit to the court that the website proves nothing. The website proves that there is a corporate family of subsidiary. We don't even know who the parent is. But whoever the parent is, there is a corporate family. Well, let me ask you. They did cite a case involving Formosa Plastics 216 Southwest 3rd, 436? Kojima. Okay. If you say so. Kojima. Kojima. Kojima has been overruled sub salientio by the Texas Supreme Court in the SS Partners case because Kojima relied upon the, I have it written down, it was a prior Texas Supreme Court case, the petroleum case, and excuse me for not having the exact name of the case, but the case that Kojima, Kojima was decided by the Corpus Christi Court of Appeals. Kojima relied for a, on a prior Texas Supreme Court case for what is known in Texas as the single business doctrine, where it used to be held in Texas that if you're controlled out of a central place and you're a single business entity, then one entity can be held vicariously liable for the other entity. Was that apart from Castleberry? And that was apart from Castleberry, but that was overruled in SS Partners. There is no such doctrine in the state of Texas, and the Supreme Court in SS Partners overruled the very case that Kojima relied upon in Kojima versus Formosa Plastics. So, there is absolutely no evidence of alter ego in this case. The Texas Supreme Court has made it very clear in PHC-Mendon and in SS Partners that there is absolutely nothing, what you have to do, a plaintiff has the burden of proof, and by the way, Judge Hoyt erroneously reversed the burden of proof in his order. Judge Hoyt said that we failed to come forward with evidence disproving that there was something unholy in the relationship among our clients and Mr. Cullen's client and whoever else is on this website, and that was not our burden, frankly, because the plaintiffs never proved a prima facie case of alter ego. Because to prove a prima facie case of alter ego you have to do more than show common ownership, common directors, supervision of finances, direction of general goals and purposes, even common names, common addresses. That's all perfectly acceptable in the modern world. In fact, the dangerous thing about Judge Hoyt's order is that it threatens to undermine what is a perfectly legitimate method for managing risk, using the corporate form worldwide to manage risk, particularly in the shipping industry, because with ships, as the court has shown, from natural disasters to man-made to piracy, you name it, the high seas are a risky business, and for that reason there are conglomerates throughout the world involving the shipping industry where they have used the corporate form legitimately to manage their risk, and if Judge Hoyt's order is affirmed by this court, I say, God forbid, because it is going to open the floodgates to disregarding the corporate form when there is no basis to do so. How did this case get to Judge Hoyt? This case was transferred. The underlying judgment was rendered by the district court in the Southern District of Florida, and then the judgment of that court against the Curacao Dry Dock Company was, I don't know the term. But your client is in Corpus Christi, one of the FPCAs in Corpus Christi, and the two boats docked in Corpus, right? Well, Mr. Cullen's client, Formosa Plastics Corporation America, is in Point Comfort. My two clients are not in Texas at all. I know that, but they were served. They were served. Well, Formosa Plastics Marine Corporation was the operator on the MV-19 and the MV-30. The operator, the master of those vessels, was served. Formosa Brick Marine Corporation, FBMC, which is the only one who owes a debt to Curacao Dry Dock Company, was not served. They were not the operators of the vessels. They had no employees on the vessels. They did not own the vessels. They had no connection whatsoever with the MV-19 or the MV-30. Their only connection, and this is because they owed the debt, is that they owned the MV Formosa Falcon, which was the vessel that was repaired by the Curacao Dry Dock Company. And that's why they've admitted that they owe the debt, but they were not present in Texas when they were purportedly served with process. And because they were not served, because if they were served, there is no minimum contact between the State of Texas and FBMC, and because FBMC is not an alter ego of all of these other entities, there is simply no jurisdiction over the garnishee in this case. And because there is no in personam jurisdiction over the garnishee in this case, Judge Hoyt did not have the authority to take matters further. He should have dismissed the garnishment for want of jurisdiction. And there's been a lot of argument in the briefs about quasi-in rem, in rem, in personam, and I think really that the case is simpler than that. The Supreme Court explained in the Schaeffer case that whether you're talking about quasi-in rem or in personam or in rem, you're ultimately talking about a person's interest in property, and I see that the red light is coming. Well, but you couldn't have quasi-in rem jurisdiction anyway because the State of Texas. Absolutely. It's not present here. So there's not quasi-in rem, but there's not in personam either. I think you've made your basic points. Thank you, Judge. Mr. Cullen, you want to speak for a minute? Your Honors, I represent Formosa Plastics Corporation America, which is a Delaware corporation which does business in Texas, specifically in Point Comfort, Texas. I have no idea why we're in the lawsuit except that I suspect it has to do with bootstrapping the other defendants into a jurisdictional situation. We filed a verified answer to the writ of garnishment denying that we owed any money to Curacao or that we knew of anyone that owed any money to Curacao. The answer was not controverted as required by the statute, and after 90 days, we filed a motion for discharge, and Judge Hoyt denied the motion subject to our asking for reconsideration, which we did later in the proceedings, and again, he denied that. We felt compelled to appeal this judgment because we're included in the judgment as one of the three garnishees, and because Judge Hoyt found an alter ego situation between us and the three other defendants, of which there is no evidence. Okay. Thank you, Judge. All right. Thanks a lot. Mr. Whitman? Good afternoon, Your Honors. I'm Phil Whitman. I represent the appellees in this case, Alberto Lucia, Fernando Hernandez, and Luis Toledo, along with my partner, Leslie Harris, who's here, John Thornton, who represented the appellees down in the state of Florida, and Augusto Molino, who has been representing the appellees over in the state of Texas. We have a number of states involved in this particular case. Your Honors, before I get to the contested issues on appeal, I would like the Court to consider the undisputed facts on which these issues are based. First of all, nobody disputes that the money in the registry of the Court over in Texas is money that's owed by Formosa Brick Marine Corporation to Curacao Dock Company. Secondly, no one can dispute that Curacao Dry Dock owes millions of dollars to the appellees pursuant to the final judgment of the United States District Court for the Southern District of Florida, which was properly registered in Texas. It's also undisputed that the interpleater proceeding protects Formosa Brick Marine from any claim by Curacao Dry Dock. So the ultimate issue before the Court that you have to decide is whether or not the appellee is a member of the U.S. District Court, and whether or not the appellee is a member of the U.S. District Court. How can it protect from Curacao Dry Dock, which is a foreign, I assume, a foreign company over which the Court has no jurisdiction? Well, Curacao Dry Dock, if they come in to try and do anything, we've got an $80 million judgment against them. We'd like to see them over here. Yeah, but those boats can't ever go there again, can they? What's that? Those boats can never use the Curacao Dry Dock or anything remotely close to Curacao because they'll get arrested, won't they? Well, that might be their problem, Your Honor, but they're the company that chose to do business with Curacao. I guess the problem is the discharge is worth nothing, that's what. Well, I don't know that I would say it's worth nothing. I think that Curacao would respect the orders of the Court, although they didn't respect the orders of the Court down in Florida. They did business with Cuba. How can we say they'll respect anything? Well, that's true, too, Your Honor. But I think in terms of who should get the money, the question is, should the plaintiffs who were held captive for 15 years as forced laborers, provided to Curacao Dry Dock by the Cuban government, should they get the money? Or should the company that profited from the plaintiffs' forced labor, Curacao Dry Dock, which Judge King found guilty of such egregious conduct, that it entered a judgment of $80 million against that company? I just think that background is helpful, Your Honors, in understanding how difficult it's been for our clients to achieve justice in this case. There are three principal issues I'd like to address this afternoon to resolve the ultimate issue of who gets the money. The first issue is whether personal jurisdiction over the garnished sheaves is required under the parameters of international shoe, or is valid service of a writ of garnishment on The second issue is whether service of a writ on the masters of the FPMC 19 or the FPMC 30 constitutes effective service on Formosa Plastics Marine Corporation. And the third is whether service on Formosa Plastics Marine Corporation is effective against its wholly owned subsidiary, Formosa Brick Marine Corporation, its alter ego. Do you agree with Mr. Weatheridge? I believe it was pretty much his opening statement that a garnishment judgment in Texas is an in personam judgment. It's an in personam judgment in the sense that the garnishee has to respond to the question put to it in the garnishment interrogatories. I do not believe we have to have in personam jurisdiction over a garnishee in an international shoe sense in order to bring a garnishment against the garnishee. We're not trying to hold the garnishee liable individually for any debt of anybody, just for the debt that it owes to the judgment debtor. So I think on that jurisdictional issue, the court has to decide what jurisdiction I think that Mr. Weatheridge hit on the head. You've got to decide what jurisdiction is required for a garnishee who served in Texas. Both FPMC and FBMC were served in Texas with writs of garnishment through the masters of two vessels that were operated by FPMC. The masters reported directly to the chairman of FPMC. In Taiwan, under Texas law, service of a writ of garnishment on a garnishee found in a state affects a valid seizure of the debt owed by the garnishee to its creditor. Yes, but you know, Mr. Whitman, you can't just serve a subsidiary and have that be good service of process on the parent company. Well, I think . . . Or much less a corporate, you know, sibling. I think the masters of these vessels reported directly to the parent company, FPMC. Where's your evidence in the record for that? That is in the record, Your Honor, with respect. I think it's in the affidavit. It's in our, actually in the charts that we provided to the court, and we have the record excerpts on those charts. We have the organizational charts that were admitted into evidence without objection, I might add. And that constitutes evidence of the direct reporting line between the masters of these vessels and the chairman of the FPMC Corporation. I mean, I don't think that follows federal rule four or state law. Well, Your Honor . . . You can't just make service of process willy-nilly on any officer of a corporation, can you? You can if that person is in the jurisdiction on the business of its employer. And I think we've cited cases to Your Honor that reflect that, including the Burnham case that we cited and also the case of . . . of the accounting case, First American v. Price Waterhouse. But I think that under Texas law, service of a real garnishment, owner garnishee found in a state, affects a valid service on the debt owed by the garnishee to its creditor. The only issue to be tried in a garnishment proceeding is who's entitled to the funds involved in the proceeding. And that's been the law, Your Honors, in the Fifth Circuit since U.S. Rubber v. Pole was decided back in 1992. The court held that service of the garnishment upon the garnishee in Georgia was effective, and the debt itself and the personal service on the debtor, a resident of Texas, was not required. But, Your Honor, we have personal service on the debtor here, Curacao Dry Dock, as well as a final judgment against Curacao Dry Dock. You can't get there without alter ego. You got that right, Judge. I'm going to come to that in just one moment. You're absolutely correct. But if I can finish with the jurisdictional argument to rebut what the opposing counsel said, I'd like to do that because basically Schaefer v. Heitner, relied on by the appellants, had nothing to do with a garnishment flowing from a judgment in which the court had in personam jurisdiction over a creditor of the garnishee. We have in personam jurisdiction over the creditor here, Curacao Dry Dock, as evidenced by the Florida judgment, which has been given full faith and credit in Texas. Curacao Dry Dock is both the appellee's debtor, its judgment debtor, and the appellant's creditor. Schaefer stands for the proposition that you can't obtain personal jurisdiction over a nonresident defendant by asserting jurisdiction solely over his property. It applies to cases in which jurisdiction over property is used to assert jurisdiction over the owner of the property. That's the distinction we make here. It doesn't apply to the appellees here because we have jurisdiction over the owner of the property, Curacao Dry Dock, and the debt FBMC owes to Curacao Dry Dock. In footnote 38 of the Schaefer case on page 210, Schaefer states that the Constitution imposes no obstacle to the full exercise of garnishment proceedings, provided the garnisher complies with the state law in service of the writ, which we did here. I think that the Fourth Circuit, in the case of Smith v. Lorelei, stated it best. The court said, and I quote, Schaefer sets limits only on the original jurisdiction of in-rem and quasi-in-rem jurisdiction over nonresident defendants, not on the imposition of an ancillary order of garnishment flowing from a judgment for which the court had in personam jurisdiction over the creditor of the garnishee.  Texas law does not require the court to have personal jurisdiction over a garnishee found in the state. We cited the case of James v. Ruthville to you on that in our brief. If the court has in-personam jurisdiction over the creditor of the garnishee, as we have here over Curacao Dry Dock, a garnishee can be compelled to answer a garnishment, even if the garnishee is not subject to being sued in the state. In the Benson case, which Mr. Welliford referred to, that case, the court stated that, and I'm quoting again, a writ of garnishment upon its service is operative in personam, as against the garnishee, and is operative in-rem on the property of a judgment debtor in the hands of the garnishee. Close quote. You don't have to file a complaint to allege jurisdiction. The sheriff or the marshal simply has to serve the writ on the person found in the state. Service alone compels compliance with the garnishment statute, because the garnishee faces no liability. And when the garnishee answers in the affirmative, the court has jurisdiction over the rest belonging to the judgment debtor, over whom it has already assessed judgment, and the garnishee may not pay any debt that it owes to the judgment debtor. The Formosa appellants cite the case of Merrill Lynch v. Allied Bank as support for their argument that a garnishee must be subject to personal jurisdiction in the state where they serve. The court in that case didn't even mention personal jurisdiction. In that case, the garnisheur, Allied Bank, did not own the underlying judgment on which the writ of garnishment was issued, and the court dissolved the writ without any discussion of jurisdiction. But no one has questioned the appellees have a valid judgment here and have a right to proceed to enforce that judgment. And the same is true of the other cases cited by the appellants. Estella Rodary, for example, found the garnishee was immune from suit in the United States because of the Foreign Sovereign Immunities Act. Indeed, the court would have had quasi-in-rem jurisdiction for garnishment purposes, but for the FSIA. The other cases cited by the appellants also involve efforts to use jurisdiction over property to acquire jurisdiction over the owner of the property. That's what Schaefer v. Heitner dealt with. But service of process alone compels compliance with a garnishment statute, even if the garnishee would not be subject to personal jurisdiction in the case. Let me turn now to the validity of the service. Service on the garnishees in this case was made on the masters of two ships, as I mentioned earlier, the FPMC Brick Marine Corporation, the FPMC-19, and the other, the FPMC-30, owned by FPMC Grace Marine. The demonstrative exhibit that I provided to your honors shows the relationship among all of these parties. FPMC was served with two separate garnishments, one by serving the master of the FPMC-30 and the second by serving the master of the FPMC-19. FOMOSA Brick Marine Corporation was also served by service on the FPMC-19. Why? I'm sorry, Your Honor? Why? Why was it served? Yes, sir. How was that accomplished? It was accomplished through service on FOMOSA plastic, FPMC-19, and FPMC-19, under an alter ego doctrine, was the alter ego of the FOMOSA Brick Marine Corporation. But your whole thing falls apart if there's not alter ego, right? That would be correct, as I said earlier. And I'll turn to that right now, if you want. I'll finish up the service. I think it would be a good idea to turn to it. I'm beginning to think so, too, Your Honor. Let me summarize the service on these masters, though, real quickly, if I may. The ship's masters all report to the ship owners as a matter of law, and to FPMC, as we've shown by the organization chart, which is based on the record and on the evidence that is in the record in the exhibit before you. My final point is that service on FPMC is effective against its wholly owned subsidiary, FOMOSA Brick Marine Corporation, which is its alter ego. The trial court found that all three of the FOMOSA entities were alter egos of each other. The court also found that FOMOSA Brick Marine Corporation was served via service on its alter egos, FBMC Brick Marine Corporation and FPMC. The standard of review for these factual findings of the court is clearly erroneous, and the record in this case fully supports Judge Hoyt's findings. The uncontroverted evidence showed that the owner of the vessel FPMC-19, which was FPMC Brick Marine, is the alter ego of FOMOSA Plastics Marine Corporation, as is FOMOSA Brick Marine Corporation, so that they're also the alter egos of each other. And where did the judge derive his principles of alter ego liability? I'm sorry, Your Honor? Was it federal law or state law or Louisiana law or what? I'm dealing basically with state law. Texas law. And the Texas law. Well, what about the Texas law then? The Texas law, Your Honor, if I may… He's absolutely right. Castleberry is dead and gone. Well, I don't think Castleberry is dead, Your Honor. Well, pretty much. It's on life support. Well, it may be, but Castleberry was cited, as a matter of fact, more recently in the case of SS Partners v. Gladstone, a Texas Supreme Court case, 2008, and was cited favorably. I think I have it right here. In the Supreme Court of Texas, 2008, and what the Supreme Court had to say about that in that case is, citing Castleberry, there must be evidence of abuse, or as we said in Castleberry, injustice and inequity. By injustice and inequity, we do not mean a subjective perception of unfairness. Rather, these words are used in Castleberry as shorthand references for the kinds of abuse specifically identified that the corporate structure should not shield. Fraud, evasion of existing obligations, circumvention of statutes, and the like. So that's a 2008 Texas case, which is pretty well… Well, how can you apply any of that to a garnishment? To whom? How can you apply any of those standards of injustice and inequity to a garnishment? Well, I'll apply it to them, Your Honor, by referencing back to what Castleberry said. And I refer to the John T. case, which is also a Texas case. All you need is evidence of injustice and inequity. That's essentially what Castleberry talks about. Well, but then Mr. Weatheritt cites 21.223, I forget which subsection it is, came after Castleberry to the effect that it takes fraud to bypass the corporate distinctions. I see that he does. But the question I have under Castleberry, which still I think the language on injustice and inequity still exists. And the question becomes, would it be unjust to allow FPMC to permit its subsidiary, for most a brick marine, pay a debt owed to the appellee's judgment creditor who benefited from the appellee's forced labor? You're saying it's only injustice. It doesn't take something like fraudulent conduct. It does not take fraudulent conduct as we see it, no. I think there's still life, Judge Jones, in Castleberry. And I think that under the facts of this case, it should be recognized. Under the authority, I'd like to spend a moment giving you the facts. You know, every plaintiff who's injured believes that an injustice has been done. So your principle is absolutely limitless. Well, it's not limitless. If what it's looking at is not the misconduct of the garnishee, because there is no proven misconduct here but only of the underlying tort suit that led to the garnishment action. I mean, that makes no sense to me. I don't think we need misconduct of the garnishee. What we need is the uncontroverted evidence we introduced to the court. Now, I say uncontroverted because FPMC's Web pages were introduced into evidence, and their authenticity was not challenged by the appellants. Both vessels are listed on FPMC's Web site as its ships. Both FPMC Brick Marine and Formosa Brick Marine are Liberian corporations owned by the same parent, FPMC. But, Mr. Whitman, I'm sure you've represented a lot of shipping companies in your distinguished career, and none of them would be able to maintain corporate separateness, at least in Texas courts, if what you say is accurate. Well, Your Honor, they could maintain corporate separateness, but for the fact that they all operate out of the same office, they all are controlled by the same people, and if I can finish going through my list of what they do, I will point that out to you very quickly. Their Web site contains an organizational chart showing that the masters of each vessel reports to the chairman of FPMC. So we have a prima facie case of alter ego from the organizational charts, and even lines of reporting and chain of command crossing corporate structures as the vessel master, as a matter of law, as the agent and representative of its owner, and according to FPMC's Web site, reports directly to officials at FPMC. Appellees served writs on FPMC and FBMC, and FPMC answered, attesting to its knowledge of FBMC's debt to the Curacao Dry Dock. So basically, in your view, alter ego is a matter of corporate organization, and it has the only connection you draw to injustice is with regard to the underlying suit. Well, there's no injustice. The injustice, I think, is allowing this money that really is owed to the appellees here to be paid to the company that benefited from its forced labor. I think that's an injustice. Well, you don't know that they benefited from the forced labor because your judgment derives from six or seven years ago, if I'm not mistaken. Well, I know that they spent 15 years down there, and I think these FOMOSA ships were running in and out of that port with pretty much regularity. But if I can just wind it up, Your Honor, the last piece of evidence I'd like to point you on is too is an affidavit from the vice president of FOMOSA Brigg Marine Corporation who testified by affidavit that the FPMC-19 was owned by FPMC Brigg Marine Corporation. And more tellingly, he stated at the time the vessel was improperly served, the vessel was under voyage charter with Shell Tankers Singapore. Now, with this testimony, FOMOSA Brigg Marine Corporation is testifying to the ownership of FPMC, which it didn't own. It's providing an opinion as to whether it was properly served and provides the details of contracts of a sister corporation. So there's evidence in the record to support a finding of alter ego among the FPMC entities themselves. None of the entities disputed or attacked the evidence, and to the contrary, FPMC testified under oath on the record about the internal details of another of the ownership entities providing proof of the relationship among all of these FOMOSA companies. Okay. You read light. I saw him. It certainly is. Thank you, Your Honor. Thank you. Good afternoon, Your Honor. If I'm Jim Buchanan, I represent the appellants along with Mr. Weatherid. Yes, sir. I would like to start by simply observing that the exhibit that shows the corporate structure of the FOMOSA entities does not show that any FOMOSA entity so dominated another that that entity lost its identity and the corporate separateness of the subordinate entity has to be disregarded. It merely shows a structure and doesn't show the relationship between the companies. Now, I would like to respond to something that Mr. Whitman said. The master of these vessels do not report to the president of FOMOSA Plastics Marine Corporation. If the court will look at the exhibit, what it shows is that the masters report to what's called a designated person ashore. There is an international safety management system treaty adopted by the IMO and then by the United Nations, which governs operations of ships. In fact, 30 years ago, they just used to put a master on the ship and say, good luck and tell us when you get back. Now, according to the STM treaty, there has to be a high level of involvement by the shoreside management structure to make sure that the safety management system, which must be in place, is adhered to by the ship and that designated person ashore is responsible for seeing to it that the safety management system is adhered to and is kept up to date and periodic audits are undertaken to make sure that the ships are complying with the safety management system. And that system has been adopted in the United States by the United States Coast Guard, by regulations which implement the safety management system in the United States. And that safety management system is applicable to the foremost of ships when they are in the waters of the United States. Can you respond to what Mr. Whitten was saying about the continuing vitality of Castleberry? I'm sorry, Your Honor. Can you respond to what we heard a few minutes ago about the continuing vitality of Castleberry? Castleberry has been overruled, Your Honor. The fact that some court said Castleberry made a shorthand rendition about fairness in the corporate world doesn't revive Castleberry. It was overruled by the legislature. The statute has been recodified as part of the business. Well, but your answer doesn't quite make sense because Mr. Whitman was citing the SS Partners case, which is a case that Mr. Weather had cited to us in support of your position. Yes. So the case that you're relying on in part, SS Partners, seems to think that Castleberry has some continuing livelihood. SSP Partners v. Gladstrong Investments, the Texas Supreme Court said the separateness of corporations is a bedrock principle of corporate law. The Supreme Court went on to say creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace. We have never held corporations liable for each other's obligations merely because of a centralized control, mutual purposes, or shared finances. All right. But Judge Southwick's perfectly appropriate question had to do with the viability of Castleberry. And SS Partners certainly is not saying that Castleberry is dead. It cites it for a particular proposition. But it simply refers to the Castleberry Doctrine as having been a shorthand description of what was at that time the law. They're basically conflating corporate organization with alter ego. And the whole point of piercing the corporate veil has always been to prevent when the corporate form is misused to perpetrate fraud or injustice. It's not when there's a complicated corporate form and somebody else has done injustice. I agree, Your Honor. I thought you might. And there is absolutely no evidence in this case that the corporate form of any of these entities was used to perpetrate an injustice on the plaintiffs in this case. And I would also point out that it's the jurisprudence in this circuit that when contemplating the application of the alter ego doctrine, that it's mandatory for the plaintiff to show that the corporate form was used to somehow perpetrate a fraud or injustice directly on the plaintiffs. And we cited in our brief a case that said, from this circuit, that says it's not enough that there is some sort of perceived injustice out there in the world as a result of the corporation, but it has to, but there has to be actual fraud perpetrated on the plaintiff in the case. Well, your red light is on, sir. There's no impersonam jurisdiction over the… You're like my husband. I say your red light is on. I'm sorry. That's okay. I have to double everything up to my husband all the time. Thank you, sir. We'll be in recess until 9 a.m. tomorrow.